IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

RICKY SMITHER                                                                    PLAINTIFF

V.                                                                                      CASE NO. 1:16cv119-GHD-DAS

NORTHEAST MISSISSIPPI COMMUNITY COLLEGE                      DEFENDANT

COMPLAINT FOR DAMAGES
Jury Trial Requested

COMES NOW THE PLAINTIFF, RICKY SMITHER, and files his Complaint for Damages against the Defendant, Northeast Mississippi Community College, stating the following, to-wit:

Parties

1. Plaintiff, Ricky Smither, (hereinafter referred to as "Smither") is an adult resident citizen of Cordova, Walker County, Alabama, and has been for more than six months preceding the filing of this complaint.

2. Defendant, Northeast Mississippi Community College, (hereinafter referred to as "NEMCC", is a political subdivision of the State of Mississippi and is an arm of several Northeast Mississippi counties. It may be served with process by serving its president, Ricky Ford, at 101 Cunningham Boulevard, Booneville, Mississippi.

Venue and Jurisdiction

3. Venue is proper in this Honorable Court pursuant to 28 USC §1391 as the events that gave rise to this cause of action occurred in whole or in part within the boundaries of the Eastern Division of the Northern District of Mississippi. Jurisdiction is proper in this Honorable Court pursuant to 28 USC §1332; in that the parties are citizens of different states and the amount in controversy

exceeds $75,000.00

Facts

4. This litigation stems from the breach of contract by the defendant, Northeast Mississippi Community College. Said defendant was contractually obligated to perform certain aspects of the contract entered into between the parties, and defendant wholly failed to do so, thus causing a breach, on or about June 30, 2015.

5. Smither is a veteran football coach with more than two decades experience in coaching high school and college level athletes. NEMCC hired Smither in February 2007 as an assistant coach. Smither was promoted to head football coach in 2008 and obtained success as the second winningest coach in school history. More importantly, his athletes obtained good grades and many went on to play football at a higher level.

6. Smither got along well with his players and his coaching staff. He improved the football program at NEMCC and was an asset for the school. Smither worked pursuant to an employment contract that was renewed each year. In 2014 Smither signed a "standard" employment contract which covered the time frame of July 1, 2014 through June 30, 2015.

7. The 2014 football season was not as successful as previous seasons. Smither heard "rumblings" that school administrators would not renew his contract. Smither continued to work hard and give his best to the program.

8. On October 16, 2014, NEMCC hosted Pearl River Community College. There was nothing particularly unusual about the game, other than a minor incident involving the marching band and Smither's dismissing an employee from the field house for good cause.

9. The following morning, a Friday, Smither was called into the office of David Robbins,

Athletic Director for NEMCC. Director Robbins informed Smither that there had been complaints that Smither cursed while on the football field the previous evening. Smither acknowledged that he had repeated a statement by a player that contained an expletive.

10. Smither was suspended and banned from campus indefinitely. Smither was dumbfounded, as were his players and assistant coaches. He was unable to continue with the season and was denied the opportunity to help athletes further their playing career by continuing his talks with senior colleges.

11. Smither apologized profusely and even sent an apology to a fan who had heard about the matter and had complained. (This particular fan did not hear the exchange personally, but merely heard about it through others and complained.) Smither did everything in his power to rectify the situation.

12. Smither was an effective coach and teacher. He upheld his contractual duties with the utmost respect and commitment. He was dedicated to NEMCC and worked tirelessly to promote and improve the athletic department.

13. NEMCC President Johnny Allen demanded Smither resign or be terminated. Smither tried to reason with him and negotiate a resolution short of termination. No resolution was reached and President Allen terminated Smither effective November 14, 2014. Smither asked for a review of his termination and exhausted all administrative remedies. Specifically Smither followed the procedures set forth to his attorney by Daniel Tucker, the attorney for the Board of Trustees.  Mr. Tucker asked that the Board take up the matter without a hearing in March 2015, and that should Smither be unhappy with the ruling he would be able to present his case at the April 2015 board meeting.  Following the board meeting of March the proposal was unacceptable but Coach Smither continued to negotiate with the defendant, all the

way until October 2015, when negotiations ended. However, The negotiations also involved the residence of the Smither family, which was part and parcel of the contract. In April 2015, Northeast formally filed an eviction notice, and ordered that the Smithers be out of their home no later than June 29, 2015, thus breaching the contract. Furthermore, it was in the same month that negotiations with the Board of Trustees were suspended. During this time, Johnny Allen was the president of Northeast. Once Dr. Allen was removed as president, Ricky Ford took over that position. Through counsel, Ford advised he wanted to continue to negotiate the contract, and asked that Smither not file suit. Smither agreed and negotiated in good faith, until October 12, 2015, when it became clear negotiations were fruitless.

14. NEMCC breached it's contractual obligation to Smither by terminating him without cause, and by evicting him without cause.

Cause of Action

15. As an employee of NEMCC, Smither had the opportunity to witness the disciplinary procedures of NEMCC. Smither was aware of the due process policies and procedures set forth in the written employee manual. Smither was aware of employees who committed grievous acts, some which endangered the lives of others, who were not terminated. Smither had no reason to believe that his conduct would result in termination of his employment. In fact, Smither had every reason to believe that his conduct was within the standards of conduct allowed by NEMCC. At worst, the conduct would warrant some minor disciplinary action. Instead, Smither was suspended, then terminated

16. Said suspension and termination are in conflict with the policies and procedures of NEMCC and further, are a breach of the contract between Smither and NEMCC.

17. Northeast further breached its contract by attempting to evict Smither and his family from

his home, which was provided as a portion of the contract.

18. Smither is entitled to the specific performance of the contract and the payment of all damages flowing therefrom.

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that judgement be entered in his favor against the defendant for the breach complained of herein, and that defendant be ordered to pay all damages flowing from the breach of the contract between the parties, including costs of court and attorney fees; as well as any other relief deemed appropriate. Plaintiff demands a trial by jury on all issues so triable as a matter of right.

This the 29th day of June 2016.

                                                Respectfully submitted,

                                                /s/Christi R. McCoy
                                                Christi R. McCoy, MSB#9986

Christi R. McCoy
Attorney at Law
1739 University Avenue, No. 252
Oxford, Mississippi 38655
Telephone:        662-816-7251
Electronic mail:     mccoylawfirm@gmail.com

Attorney for Ricky Smither