IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RICKY SMITHER                                                                        PLAINTIFF

v.                                              CIVIL ACTION NO. 1:16-cv-00119-GHD-DAS

NORTHEAST MISSISSIPPI
COMMUNITY COLLEGE                                      DEFENDANT

**MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION TO DISMISS**

       Presently before the Court is a motion to dismiss [11] filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure by Defendant Northeast Mississippi Community College. Upon due consideration and for the reasons stated below, the Court finds that the motion to dismiss [11] should be granted.

*I.      Factual and Procedural Background*

       On June 29, 2016, Plaintiff Ricky Smither ("Plaintiff"), former football coach at Northeast Mississippi Community College, filed this action against Defendant Northeast Mississippi Community College ("Defendant"). Plaintiff asserts a breach of contract claim against Defendant pertaining to the termination of his employment. Plaintiff alleges that Defendant hired him in February 2007 as an assistant football coach and promoted him to head football coach in 2008. Pl.'s Compl. [1] ¶ 5. Plaintiff worked pursuant to a one-year employment contract that was up for renewal each year. *Id.* ¶ 6. In 2014, Plaintiff signed a standard employment contract that covered the time frame of July 1, 2014 through June 30, 2015. *Id.* Plaintiff avers that after certain incidents occurring during a home game against Pearl River Community College on October 16, 2014, Defendant terminated his employment. *Id.* ¶ 13. Plaintiff further avers that he exhausted his administrative remedies. *Id.* Plaintiff alleges that Defendant breached its contractual obligations

1

to him by terminating him without cause and by evicting him without cause. *Id.* ¶ 14. Plaintiff's complaint does not explicitly state an amount in controversy, but provides that Plaintiff seeks "the specific performance of the contract and the payment of all damages flowing therefrom . . ., including costs of court and attorney's fees[,] as well as any other relief deemed appropriate." *Id.* ¶ 18, 5.

In lieu of filing an answer, Defendant has filed the present motion to dismiss, wherein it contends pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure that the Court does not have diversity jurisdiction over the case because Plaintiff has failed to satisfy the jurisdictional amount in controversy. Plaintiff filed a response, and Defendant filed a reply. Subsequently, without leave to do so, Plaintiff filed what is apparently an untimely memorandum brief corresponding to her earlier filed response, and Defendant subsequently filed an amended rebuttal to Plaintiff's memorandum brief.

## II. *Analysis and Discussion*

" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " *Gunn v. Minton*, — U.S. —, —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (Feb. 20, 2013) (quoting *Kokkonen v. Guar. Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). "A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing FED. R. CIV. P. 12(b)(1)). "[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (internal quotation marks and citations omitted).

The Fifth Circuit has instructed:

> A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. Thus, under Rule 12(b)(1), the district court can resolve disputed issues of fact to the extent necessary to determine jurisdiction[.]

*Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quotation marks and citation omitted).

Plaintiff alleges in the complaint that the basis of the Court's jurisdiction is federal diversity jurisdiction. Federal diversity jurisdiction requires complete diversity between plaintiffs and defendants and an amount in controversy that exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387 (5th Cir. 2009). Defendant does not dispute diversity of citizenship;[1] its sole challenge in the present motion to dismiss is to the jurisdictional amount in controversy.

Defendant attaches to its motion to dismiss supporting documentation. The motion therefore presents a facial attack that requires the resolution of factual matters outside the pleadings. In ruling on a Rule 12(b)(1) motion to dismiss, the Court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotation marks and citation omitted).

---

[1] The Court notes that diversity of citizenship is established in the case *sub judice*: Plaintiff alleges that he is a citizen of Alabama and that Defendant is a political subdivision of the State of Mississippi, hence a citizen of Mississippi. Pl.'s Compl. [1] ¶¶ 1–2. *See City of Houston, Tex. v. Standard-Triumph Motor Co.*, 347 F.2d 194, 205 (5th Cir. 1965) ("Ordinarily, actions brought by or against a political subdivision of a state are maintainable in a federal court on the ground of diversity of citizenship."). Thus, Plaintiff alleges that "the parties are citizens of different states." Pl.'s Compl. [1] ¶ 3.

3

Courts generally begin the amount-in-controversy analysis by " 'look[ing] only to the face of the complaint and ask[ing] whether the amount in controversy exceeds' the jurisdictional threshold." *Ervin v. Sprint Commc'ns Co.*, 364 F. App'x 114, 117 (5th Cir. 2010) (per curiam) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996)). The Fifth Circuit has stated that "[i]t has long been recognized that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S. Ct. 586, 82 L. Ed. 845 (1938) (internal citation omitted)). "[H]owever, . . . this 'legal certainty' test has limited utility—in fact is inapplicable—when, [as in the case *sub judice*,] the plaintiff has alleged an indeterminate amount of damages. *See id.* (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir.), *cert. denied*, 516 U.S. 865, 116 S. Ct. 180, 133 L. Ed. 2d 119 (1995)). "Importantly, the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *Id.* at 1253–1254 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89, 58 S. Ct. 586) (internal citation omitted)).

Pertinent to the amount-in-controversy analysis, in Plaintiff's complaint, he seeks damages for Defendant's alleged breach of his employment contract by "terminating him without cause" and by evicting him from his residence provided by said employment contract "without cause." Pl.'s Compl. [1] ¶ 14. Although Plaintiff alleges in his complaint an indeterminate amount of damages, he conclusorily alleges that "the amount in controversy exceeds $75,000." *Id.* ¶ 3. Plaintiff seeks the following: "the specific performance of the contract and the payment of all damages flowing therefrom . . . including costs of court and attorney fees[,] as well as any

4

other relief deemed appropriate." *Id.* ¶ 18, 5. "Where, as here, the plaintiff's complaint makes only a conclusory statement concerning jurisdiction and the amount in controversy is indeterminate, we ask 'whether it is "facially apparent" that the claims exceed the jurisdictional amount.' " *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319 (5th Cir. 2012) (per curiam) (quoting *St. Paul Reinsurance Co.*, 134 F.3d at 1253). The Court finds that it is not facially apparent that Plaintiff's claims exceed the jurisdictional amount. The complaint merely indicates that the amount in controversy is comprised of the specific performance of the contract and any damages flowing therefrom that would not include fees and costs. Plaintiff's complaint includes " ' bare allegations [of jurisdictional facts] [that] have been held insufficient to invest a federal court with jurisdiction.' " *See St. Paul Reinsurance Co.*, 134 F.3d at 1253 (quoting *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041, 114 S. Ct. 685, 126 L. Ed. 2d 653 (1994)).

Furthermore, in considering Plaintiff's subsequent arguments in response to the factual challenge, as well as the record in this case, the Court finds that Plaintiff has failed to meet his burden on the jurisdictional amount in controversy.

The undisputed facts in the record are as follows. Plaintiff entered into an Administrative and Professional Staff Contract for Employment with Defendant on June 1, 2014 to be the head football coach for the Northeast Tigers for the 2014–2015 school year; the contract term was July 1, 2014 through June 30, 2015. *See* Administrative & Professional Staff Contract for Emp't, Northeast Miss. Comm. Coll., 2014–2015 [11-1]; Def.'s Mot. Dismiss [11] ¶ 3; Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss [12] ¶ 3. Defendant terminated Plaintiff's employment contract effective November 14, 2014. *See* 10/17/2014 Northeast Miss. Comm. Coll. Mem. to

5

Pl. [11-2]; 11/11/2014 Northeast Miss. Comm. Coll. Corres. to Pl. [11-3]; Def.'s Mot. Dismiss [11] ¶ 4; Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss [12] ¶ 4. Plaintiff's prayer for specific performance of the contract includes only the remaining amount due to him under the subject employment contract. *See* Def.'s Mot. Dismiss [11] ¶ 6; Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss [12] ¶ 6. Defendants state that the amount due under the contract itself by specific performance would be $65,690.22, due to the fact that Plaintiff had received $39,512.79 of his yearly total compensation of $105,203.01 at the time he was terminated; these statements are supported by Defendants' attachments, including the employment contract itself and the sworn affidavit of Chris Murphy, vice-president of finance at the college. *See* Def.'s Mot. Dismiss [11] ¶ 5; Administrative & Professional Staff Contract for Emp't, Northeast Miss. Comm. Coll., 2014–2015 [11-1] at 1 (showing base salary of $75,190 and increments of $1,800, totaling $76,990); Murphy's Aff. [11-4] ¶ 5 (attesting that Plaintiff's compensation package for 2014–2015 school year totaled $105,203.01), ¶ 6 (attesting that Plaintiff received total gross pay and benefits of $39,512.79 at the time of his employment termination); ¶ 7 (attesting that the total unpaid post-termination compensation package under the contract is $65,690.22). Plaintiff does not dispute these amounts, but disputes that these amounts indicate all of the damages available to him from the contract.

The parties' dispute is thus limited to the amount of damages flowing from the contract. Plaintiff contends he will show other areas of compensation not included in the motion to dismiss, including "his accrued vacation time, the meal ticket provided to members of his family, and other items." Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss [12] ¶¶ 5, 8. However, as demonstrated in the Court's below analysis of these possible additional areas of compensation, Plaintiff has failed to raise his claim above the jurisdictional threshold.

6

First, Plaintiff argues that he is entitled to contractual damages for his accrued sick and vacation leave of approximately 99 days, the value of which Plaintiff claims would be in excess of $10,000; Plaintiff attaches no documentation in support of this argument. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Dismiss [14] at 2. Defendant argues in response that Plaintiff accumulated a total of 90 days of sick and vacation days, but was given full credit for this accumulated leave through the Public Employees Retirement System of Mississippi (PERS) in that his total time of employment in Mississippi's retirement system has been increased accordingly. Def.'s Reply Supp. Mot. Dismiss [13] ¶ 5. In support, Defendant attaches to its reply the second sworn affidavit of Chris Murphy, *see* Murphy's 2d Aff. [13-1] ¶ 5, as well as the PERS Employer Certification of Termination and Accumulated Unused Leave [13-1] at 3. Based on the foregoing, the Court finds that these damages cannot be included in the computation of the required amount in controversy.

Second, Plaintiff argues that he is entitled to contractual damages for the meal ticket provided to members of his family. Plaintiff argues that his two minor children consumed approximately 8 meals each week for a total of 16 meals each week for a benefit of over $3,000 per year. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Dismiss [14] at 2. Plaintiff attaches no documentation supporting this argument. Defendant argues in response that Plaintiff's meal ticket was "provided as a coaching perk," but was not a contractual right. Def.'s Reply Supp. Mot. Dismiss [13] ¶ 6. Defendant further argues that Plaintiff was provided a 19-meal-per-week cafeteria plan, and that between the date of his employment termination, November 14, 2014, and the date his contract would have expired, June 30, 2015, Plaintiff could have consumed a maximum of 288 meals at $5.25 each. *Id.* ¶ 7. Therefore, Defendant contends that the meal plan had a maximum cost to Defendant of $1,512. *Id.* In support of this argument, Defendant

7

attaches the second sworn affidavit of Chris Murphy. *See* Murphy's 2d Aff. [13-1] ¶¶ 6–7. Defendant further argues that Plaintiff's family did not have a meal plan, nor were they allowed to eat in the cafeteria for free. Def.'s Am. Reply Supp. Mot. Dismiss [15] ¶ 7. The Court finds that Plaintiff has failed to demonstrate that either a meal plan for Plaintiff or a family meal plan would have flown from the contract; however, even assuming *arguendo* that Plaintiff's argument is sufficient to satisfy his burden as to the meal ticket, at most, this would affect his amount in controversy as follows: $65,690.22 for specific performance + $1,512 for Plaintiff's meal plan + $3,000 for damages pertaining to Plaintiff's family meal ticket for a total of $70,202.22. This total amount of damages is obviously insufficient to meet the jurisdictional threshold.

Third, Plaintiff argues that he is entitled to contractual damages for other items, including damages stemming from his eviction and for reimbursement for college recruiting-related travel. These items are not mentioned in the complaint.

Plaintiff argues that he is entitled to damages for his subjection to an eviction proceeding that "caused intense embarrassment and humiliation[,] as well as emotional distress" and required him to "retain counsel at his own expense to defend the same." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Dismiss [14] at 2. Defendant correctly argues that any such claim for damages was not pled in the complaint and would fall within the purview of the Mississippi Tort Claims Act (the "MTCA") requiring notice of claim. *See* Def.'s Suppl. Reply Supp. Mot. Dismiss [15] ¶ 8. Defendant further correctly argues that attorney's fees generally are not included in the amount in controversy analysis. *See id.* ¶ 9. "Attorney's fees are included in the computation of the jurisdictional amount only when they are expressly authorized under applicable state law." *Celestine*, 467 F. App'x at 319 (citing *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 874 (5th Cir. 2002)). "[Plaintiff], who bears the burden of establishing

8

jurisdiction, does not identify any state law that entitles him to attorney's fees here." *See id.* For these reasons, Plaintiff's argument as to damages stemming from the eviction is not well taken; no such damages can be included in the computation of the required amount in controversy.

Plaintiff further argues that he is entitled to reimbursement expenses for college recruiting-related travel he completing during the off season, "money [that] was withheld from him" when his employment was terminated. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Dismiss [14] at 2. Plaintiff has not indicated any approximate amount of such damages, nor has he attached documentation supporting such damages, nor has he pled such damages in his complaint, nor are such damages mentioned in the subject employment contract. Accordingly, no such damages can be considered in the computation of the required amount in controversy.

As stated above, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Court finds that Plaintiff has failed to meet his burden in showing that the amount in controversy exceeds the diversity jurisdictional threshold. The amount in controversy is not satisfied on the face of Plaintiff's complaint, and Plaintiff has not otherwise demonstrated that his case meets the jurisdictional threshold. Instead, Plaintiff has at most supported a claim for damages totaling $70,202.22. Accordingly, Defendant's motion to dismiss [11] must be granted, as the Court lacks subject-matter jurisdiction over the case *sub judice*.

Plaintiff argues: "Should this Honorable Court find the claims to be unsupported, [P]laintiff prays this Honorable Court will remand the case to state court for adjudication rather than dismissing the same." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Dismiss [14] at 2–3. It appears to the Court that the Plaintiff's request to remand the case to state court would be well taken had this case originated in state court. Since the case was not originally filed in state

court, this Court is without authorization to remand. It further appears that the appropriate procedure will require the filing of an initial case in the appropriate state court.

### III. Conclusion

In sum, Defendant Northeast Mississippi Community College's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss [11] is GRANTED, because the Court lacks subject-matter jurisdiction over the case *sub judice*. ACCORDINGLY, all claims are DISMISSED WITHOUT PREJUDICE, and this case is CLOSED.

A separate order in accordance with this opinion shall issue this day.

THIS, the 19th day of July, 2017.

_____
SENIOR U.S. DISTRICT JUDGE